We'll hear argument next this morning in Case 09-6822, Pepper v. United States. Mr. Parrish. Mr. Chief Justice, and may it please the Court, having successfully completed drug treatment in prison, and having come home to succeed as a college student, valued employee, and family man, Jason Pepper presents to this Court two questions. Whether post-sentencing rehabilitation is a permissible basis for a downward variance from the sentencing guidelines at resentencing, and whether the district court judge in Pepper's resentencing was bound by the law of the case doctrine in its 5K departure ruling, absent new facts, changes in the controlling law, or to avoid a manifest injustice. Post-sentencing rehabilitation has traditionally been a relevant factor for judges to consider and is now a permissible ground for a non-guideline sentence. 3553A and 3661 are the authorities permitting post-sentencing rehabilitation as a consideration for variance. 30- I think you've got a difficult job navigating between your two issues. It seems on the first one, the 40% to 20%, you're saying, look, you've got to stick with what you did before. And when it gets to the post-sentencing consideration, you're saying, well, we can — all bets are off. We can start anew. We can look at things that have happened since. Is there a way you reconcile that tension? They're like apples and oranges. The law of the case doctrine is what you refer to as a matter that's left in the district court. The other issue of the — whether or not the individual qualifies for a downward variance is a completely separate issue. The law of the case remains with the district court judge. And the other issue that we have, it's whether or not he's entitled to a downward variance based upon the book of remedies. So they are not, in fact, the same issues. If there is a — If the law of the case is left to the district court, then the district court can say, well, the law of the case, that's what that other judge said, but it was a question of what's a reasonable time, and I appraise it differently. The judgment has been vacated, the sentence has been vacated, so how does the law of the case survive? I mean, the judgment is no longer — The law of the case survives on a couple of basic principles. One, there has to be new facts that the district court judge heard. There has to be a change of controlling law. And there has to be a reason to avoid a manifest justice. If you go back to the 5K1 departure that the first judge made the decision on, that law — that was the law of the case. That percentage followed Mr. Pepper straight through the process. That's a totally separate ruling from any of the other factors in this case that relate to his downward variance. Ginsburg Can a district judge say later on in the process, I made a ruling earlier in the case, I have since done a lot of research, and I now think that that ruling was wrong? Absolutely. They could do that. The circumstances would be, did they see new facts, was there a change in controlling law? The reason we do this is because we want to have confidence in that decision to make sure litigants don't go judge shopping. So that's part of the reason this law of the case doctrine is in there. Even in Judge Posner's Seventh Circuit decision we cite in our brief, you defer to the first judge. But any time a judge can reconsider, there's no problem with that. But the law of the case in the 5K departure, when the first district judge heard substantial evidence with regard to the issue of cooperation, and that's what he did, when the next judge heard it, she heard no new facts, no change in controlling law, and absolutely heard no evidence with regard to it. That's kind of a fortuitous situation, then. You're sort of saying if you end up with the same judge, she can reconsider her own prior determination. But if you, for whatever reason, the death of the first judge, you're in a different judge. She's bound by what went before. That doesn't seem right. Well, that's an excellent example, bound by, but you have to look at the law of the case and make a decision whether or not new facts came in, there was a change in controlling law. Otherwise, you are still stuck as law of the case with that particular information. If new facts came in. Even with the original judge? Even with the original judge, absolutely, Justice Scalia. Unless there are new facts or some, some new. New facts, a change in controlling law of other factors. It's a basic concept, and that's why a lot of cases are not floating around about that. Counsel, I'm a little confused. I thought that the entire premise of Booker was that judges should have full discretion under 3553 to balance the factors that are required by the statute to be balanced and to come to what they believe is the appropriate sentence. If we impose in a resentencing, in a remand order that has vacated a prior sentence, a limitation on that power, don't we in turn do exactly what you're arguing in your first half of your appeal, which is unconstitutionally tie the hands of the judge? I think that was what Justice, the Chief Justice was getting to in his first question. That's absolutely, that's why the apples and oranges. If you go to the Booker decision with regard to Mr. Pepper, and Mr. Pepper's decision is under the remedial remedy that we're asking that you impose in this case, Mr. Pepper's case is still on direct appeal. As a matter of fact, if the restrictions placed upon 3742g2, if they remain, Mr. Booker would have not gotten the advantage of the remedial ruling in the case. Actually, he was entitled to it as part of the Sixth Amendment. Sotomayor, so why isn't a new sentence just that, a new sentence? And the judge, whatever the judge is, can do what they're supposed to do, which is to look at all of the factors and weigh them as that judge believes is appropriate, assuming the remand order is not a limited order. They can look at all of the facts. If there were new facts presented, the difference is in the law of the case, there were no new facts. In this case, there were new facts to consider, which would be part of the post-sentencing rehabilitation. In that issue, the Eighth Circuit rule that prohibited this was not even part of the 3742g2 statute. Scalia, but one of the new facts that is before a judge on remand is that part of the basis for his decision has been eliminated. He gave additional time because of a certain factor, and the court of appeals says, oh, no, you can't look at that factor. And then he looks at the whole thing and says, gee, without that factor, this guy is getting off scot-free. You mean he cannot readjust his other discretionary judgments in light of the fact that this additional factor doesn't exist? That seems rather, I don't know, counterintuitive, I guess. Well, Justice Scalia, under the issue that's presented to the Court, if you mix up a law of the case doctrine with the 3742 problem, it creates a problem in analysis. That's why they have to be analyzed separately. A judge can look at new facts, even under the remand statute now, but they are restricted to the facts that were part of the first case. That's what 3742g2 does. It makes the guideline sentences mandatory on remand. That's the problem with it. If they become mandatory on remand, the problem is nobody gets the advantage of the Booker remedial ruling or the direct ruling, and all sentences on remand are mandatory. Even in the Booker decision, you make it, which Mr. Pepper was a recipient of, because this case was going on during that time, he did not ever get the benefit of the Booker decision. When it was sent back, he never did. Mr. Booker, under 3742g2, never would have gotten that advantage. And there are several other factors that were coming into play where people would never get advantage of the Booker ruling. Ginsburg. Well, what do you do with 3742g2? You excise it. You discussed it in the Booker decision, and in the Booker decision, you indicated, Justice Ginsburg, that you excise two of the other 3553b, you also excise 3742e, which made the sentences on remand mandatory. In this case, 3742g2a and b were left open. And what happens then, the district court judge has to come back, once they look at the decision, they are bound within those original facts. They can't go outside of those facts to decide something different or to permit a variant. The circuit didn't use that rule. What we are suggesting is that you excise that rule. You excise 3742g2, and you excise a and b of that section. Would it be consistent with Booker for Congress to pass a statute that says the following, when a judge initially imposes a sentence, the judge must specify all of the factors that the judge thinks are relevant to that sentence, whether it's going to be a sentence within the guidelines or a sentence that's outside of the guidelines, and if there is then a remand, the judge may impose a sentence based on the factors that were listed at the initial sentencing, but not based on any other factors? Justice Alito, Congress could do that. Unfortunately, that's not what they did in this case. The 3742, which came down as part of the Protect Act, in that case, Booker came after that. So consequently, 3742g2 is problematic. Isn't that exactly what 3742g2 does? It does not. It says, well, under 3553c, the sentencing judge is supposed to explain the factors that justify the sentence that's imposed. And that would — that means explain a sentence outside of the guidelines, but it wouldn't also explain why the judge chooses a particular sentence within the guidelines range. And then 3742g2 says that when there's a remand, the judge may take into account all the factors that were mentioned the first time, but not other factors. Well, Justice Alito, let me give you an example. What if they didn't state the reasons and you go up on the variance from the district court decision saying you didn't give a stated reason? The appellate court then sends that decision back, and the judge is then bound by those facts. And if they didn't find all of the facts — let's suppose, again, they went up on a presumption that the guidelines are, in fact, reasonable. In that instance, you wouldn't get anything for the judge to work from. And absolutely, they work from facts now within the guidelines. You take the Stapleton case that's in the Eighth Circuit that's cited in our brief, they will increase the guidelines within the guidelines on new facts. Yet, you can't take those same new facts and then use them to assist your clients under 3553. It goes against all of the rules. Is the Sentencing Commission — it still has that guideline that you can — you can depart — you can lower within the guideline, but not beyond it? Correct. You mean under the post-sentencing rehabilitation? Yes. They have it as a bar, a policy bar, but the Kimbrough decision really indicates that the courts are not supposed to use that as only one factor. You're supposed to look at all the rest of the factors. And as a matter of fact, the post-conviction— But as far as the Sentencing Commission itself is concerned, its position is still that post-conviction behavior does not warrant a below-the-guideline sentence. Correct. And it comes right out of the Eighth Circuit, which was not based upon empirical data, like a lot of these other issues are based on that they create as policy matters. But under Kimbrough, you said policy matters are only one consideration. You must, in fact, look at all the other factors. You also said it in Reader, too. You're not bound by just one of the factors. The Court has to look at everything in order to be able to make a decision, be consistent with all of the other decisions that you've written in this area. Suppose that Mr. Pepper had an identical twin. And suppose that Mr. Pepper and his twin engage in the same criminal conduct. They're charged with the same offenses. They're tried together. They're convicted of exactly the same offenses. They're sentenced on the same day. Between sentencing and the time of the appeal, they rehabilitate themselves in exactly the same way. Now, the twin's sentence is affirmed on appeal, and Pepper's sentence is overturned, and he is he gets a remand for a new sentence. Why is it justified for Mr. Pepper to get credit for post-sentencing rehabilitation, but his twin does not? Well, in that instance, the question is the Guidelines accept the fact of some disparity. And there's what's called warranted disparity. Mr. Pepper did exactly everything that we want a person convicted of a crime to do. He exceeded it. And in that instance, if his case comes back down, it doesn't fall on any concept of unwarranted disparity. There is a difference. There is a difference between the people who did it. Alito, he's twinned everything that was expected of him, too, but he doesn't get any credit for the rehabilitation. He just gets good time credit for good conduct while he's incarcerated. But our Guidelines and our laws make situations where people who are unique and who, in fact, exceed don't fall into a separate category of being unwarranted disparity. The emphasis on is on unwarranted. There is some disparity, and if a person is unique and that person does, in fact, on the 3353 factors, meet all of the things that require us to look at a person as an individual, that's what we want in our society, and that's what your case says, 3553, 3661, that's what they indicate, you look at the person as an individual. And true enough, some disparity will be there, but it's a warranted disparity, and it's something that the Court can look at, along with all the other factors. Roberts, it's warranted that the one get the benefit, and it's unwarranted that the other does not. I mean, the departure in the case of the one who gets the reconsideration is warranted, but that doesn't mean that the disparity is warranted. Well, it would be on a variance, and as you know, under the Gall decision, Chief Justice Roberts, you can look at all of the other factors. Under the departure theory, it's a little bit different. They're a little bit narrower, given it's more restrictive, and there's other factors that come into play. Under the variance theory, you have to look at the entire individual, so if that individual can demonstrate that they have made improvements, not just gone to drug classes, but completed them successfully, not just worked as an employee, but also sold and got on a management track after commission, not just went to college, but got on the dean list and made straight A's, those are the factors that we want these individuals to have. And that's why 3553A allows us that latitude, and 3661, which is a long history, based upon no limitation being placed upon the district court judge, these are the things we want these people to do. Breyer. Is there a guideline that says that they cannot be a departure for rehabilitation after an initial sentencing that's set aside? It's not a guideline. No. There's a policy out of the agency. So as far as the answer to Justice Ginsburg, what I thought was her question then is, the guidelines initially said that the commission has the power to limit departures. But it doesn't do it, except for race and gender. And age and factors like that. That's absolutely right, Justice Breyer. So under the guidelines, a judge can depart for any reason except those few forbidden things, which I think are properly fair. And that's the grant of variance. That's correct. And that's still the law. That's still the law. That's correct. And so it's the circuits that have made this thing up. The Eighth Circuit created out a whole cloth following the Sims case, and it was a policy that was actually adopted by the guidelines in the year 2000. Prior to that, there were about eight circuits that allowed post-sentencing rehabilitation. Now, even under the new analysis, there are about six circuits that allow it. Breyer. What would the source of law be to make up such a thing? I mean, what is the source? What law gives the right to the — a circuit to make that up would have to say it was an unreasonable thing to do. Now, I guess you could have an argument either way on that, but it doesn't strike me off the bat as unreasonable, where a person has rehabilitated himself to take that into account. I would agree with you. And we would have the power to say that. Absolutely. What about 3742G2? I will not affirm that. That's what we're arguing about. No. It is what we're arguing about, not about the policy, because they didn't even use that, Justice Scalia, in making their decision. I would like to reserve my time. Thank you, counsel. Thank you so much. Mr. McLeese. Mr. Chief Justice, and may it please the Court, there is no valid basis to categorically bar variances under the — variances from the Guidelines based on post-sentencing rehabilitation. That's true for four primary reasons. First, it's undisputed that post-sentencing rehabilitation is logically relevant to statutory sentencing factors in 3553A, including the need for deterrence and the need to protect the safety of the community. Second, the Guidelines themselves authorize consideration of pre-sentencing rehabilitation to a limited extent, because it's permissible under the Guidelines to consider pre-sentencing rehabilitation in selecting a sentence within the guideline range. What the Guidelines do prohibit, and there is a provision in the Guidelines that does prohibit, a departure from the Guidelines based on post-sentencing rehabilitation. The Guidelines prohibit that, but the judgment of the commission about how much weight that factor can be given after Booker in an advisory Guidelines regime is advisory rather than mandatory. Third. Breyer, what's the Guideline? What Guideline, please? It's 5K2.19. And third, contrary to the suggestion of amicus, there is no general principle in our law that at a resentencing new information may not be considered. To the contrary, the consistent assumption of the law is that at a resentencing, you take the defendant as you find him as of the time of resentencing. That's clear from this Court's decisions in Pierce and in Wassman. It's clear from the large body of cases from the lower courts cited in Petitioner's brief at pages 42 through 44. That's the way the Guidelines operate. So there is no general principle that you cannot consider new information. Now, it's true, as Justice Alito's question suggested earlier, that that can result in differences of opportunity, where one defendant will have an opportunity for a resentence and new information will be considered as to that defendant. A similarly situated defendant will not get a resentencing. But that opportunity is sometimes referred to as luck. First, can be good luck or bad luck. And to take the example Justice Alito gave of two twins, if you have an example of two defendants who are twins who are each convicted of an offense, let's say burglary, and they are given very lenient sentences. And because the judge looks at their record at the time and determines that they are sympathetic, they don't have a prior criminal record. One of them's conviction, you know, has no claims of legal error relative to his conviction and gets no resentencing. The other gets a resentencing. By the time of resentencing, it's become clear that that defendant had previously committed several murders, and he's, you know, murdered, has also committed a subsequent murder. There is no question that at that resentencing, that information would be considered. There is no question there would be a disparity, and it would be true even if, let's say, those earlier murders had been committed by both of the twins together. Alito, isn't there a difference between evidence that – evidence of conduct that occurred prior to the initial sentencing but wasn't known at the time of the initial sentencing and evidence of conduct that occurs between the initial sentencing and the resentencing? There could be, but again, maybe going too far with the example of the twins. If the two twins, while they were serving, let's say they got lenient sentences but not probation, while they were serving in jail together, they murdered a correctional officer, if one of the defendants does not get a resentencing, if one of those twins does not, then there will be no opportunity for that to be taken into account. The other who gets a resentencing. Maybe it's all or nothing. You know, maybe it works both ways, that the defendant doesn't get the credit for good conduct between sentencing and resentencing, but also doesn't get punished at resentencing for unproven conduct that occurs between the first sentence and the second sentence. That's a possible rule of law, but my point was that's not the rule of law we've ever had. That's not the – and I should say, nor is it the rule of law that's created by 3742g2, because 3742g2 is not a rule about consideration of new evidence. It's an anti-departure provision. It permits consideration of new evidence, and it permits these kinds of disparities, whether warranted or not, because it permits consideration of new evidence in determining the guidelines range, new evidence about loss amounts or whatever. It permits consideration of new evidence as it might relate to upward adjustments or downward adjustments, as it might relate to criminal history. What it forbids is new variances or departures. So 3742g2 does not implement some general policy with respect to new evidence, nor should I say to the guidelines, because as I said, the guidelines permit consideration of post-sentence rehabilitation in setting a guideline range. They reflect a judgment not about the disparities always trumping other considerations, including accuracy in sentencing, but only how much weight that those disparities put on it. Scalia. Is that your fourth point? I'm all on pins and needles waiting for your fourth point, Wisman. Is that it? No. Apologies. The fourth point is simply that 3742g2, if valid, would foreclose consideration of post-sentencing rehabilitation, but after Booker it is not valid. And if Congress reenacted 3742g2 tomorrow, would it be valid? It would be invalid. It would be invalid because it would be, as applied in certain circumstances, it would unconstitutionally constrain the authority of judges at resentencings and it would be invalid. Why? Because, look, this is not this case. This case they never had a chance to consider whether Booker applies or not. So this is, I think, a special case. But think of 3742g in general. It's pretty easy to read that section as applied to instances where a judge, the initial sentencing judge, has decided on his own volition to apply the guidelines rather than not to apply them. Now, in such a case, he sentences the individual. There's then an appeal, and the appeal he's reversed on. What in the Constitution says there has to be a second chance to decide whether the guidelines or something else should apply? What in Apprendi says that? What in any of these cases says that? This is an Apprendi problem. As you know, I've dissented throughout. I think this is bad policy. I've disagreed with everything. But forget that fact, important though it is. But the thing that's worrying me about, and I don't think I agree with you on policy, but what I'm having trouble with is, is it better under the law to say, yes, we can constitutional, and then if in some cases it violates Apprendi, let the court say. But in this case, it violates Apprendi, but it just isn't clear to me, which is why I left it alone the first time. It's not clear. So as to when it is, when it isn't constitutional, if you got my whole question there, I'd appreciate as much answer as you can give me. To take an example that's in the briefs, if at an original sentencing a judge determines the guideline range and ends up calculating it to be relatively low, 57 to 73 months, which probably aren't even exact numbers, and determines that that's an appropriate sentence, and although the defendant is urging various factors as a basis for downward or for variance from the guidelines, the judge determines that there's no reason to vary because this is a sentence that seems reasonable. So although those reasons might well be persuasive in some contexts, they aren't given the range now. The government takes an appeal and argues to the court of appeals, in fact, the judge was wrong, the guideline range is much higher. And so on remand at the resentencing, the judge makes some factual determinations not found by the jury or admitted by the defendant, which increase the guideline range under the new advice from the court of appeals to a guideline range of 121 to 151 months. And then the judge says Breyer, that violates Apprendi. If the judge then says, I would like to vary from the guidelines, I am locked in under the guidelines to a 121-month sentence, and I have — it's true I didn't vary before on these grounds, but that's because the sentence didn't warrant, because of its relative lack of severity, did not warrant a variance, I think that the logic of Apprendi and Booker would foreclose constraining resentencings in that way. And I think that's an answer, if I just — I think that's an answer to the question that you had asked earlier, which is I think if Congress enacted a statute which categorically said that whatever happens at the original sentencing, the judge has to list any reason that the judge is relying on for a downward variance or departure, and then cabins the judge to that on a remand, that in certain contexts that would be inconsistent with this Court's line of cases from Apprendi through Booker. Alito, well, under 3553c, the Court is supposed to explain the reasons for the sentence, even if it's within the guidelines. Isn't that right? Yes. And so if the Court is deciding whether the sentence should be 57 months or 63 months, whatever the figures were that you gave, the Court thinks that some factor, let's say age, is significant. The Court should say I'm sentencing the defendant to 57 as opposed to 63 because of the defendant's advanced age or young age or whatever it is. Now, on appeal, the court of appeals says the guideline sentence was improperly calculated. It should be the real range is 120 to 125 months remand. Now, if the Court wants to grant a departure or a variance based on age, the Court has mentioned age previously as a relevant factor, and it can do that. But if age wasn't — if age was not relevant to the determination of where within the guidelines the sentence should be set, why is it — why does the Constitution require that age be a relevant factor, a factor that's open to the judge on resentencing? It's just a notice provision. It's not — it's not something that substantively limits what the Court can do. To clarify, a judge is required to state in open court orally the reasons for a sentence inside the guideline range only if the range is sufficiently large. And the written statement of reasons does not require — the reasons for selecting a sentence in the — within the guideline range are not required to be in the written statement of reasons. The written statement of reasons relates only to grounds outside the guidelines. And to — from a practical perspective, it would be extremely difficult to expect sentencing judges to list every conditionally or contingently relevant fact, depending on whatever sentence ultimately comes back on remand, that might be relevant to a reason to depart from a range that the judge is not contemplating at the time of the sentencing. But I should say also that the answer to this question of whether Congress could reenact 3742g2 after Booker and it would be constitutional or not constitutional as applied in certain settings is not essential to our point, because the appeal provisions that were excised in Booker were not determined by the Court. They were not excised because the Court determined they would be independently unconstitutional. The remedial component of the Booker opinion was focused on the question of, having found a constitutional violation, what then do we do to remedy it? And what the Court said was, the way we will remedy this is that we will make the guidelines advisory rather than mandatory. Breyer, this case is, I don't think, too hard. You say it's at least questionable enough, the 42g, you could say, at least questionable enough that it's in the same box as the ones that were excised, and then there has not been focus in the district court on what the district court would want to do, assuming he is free to apply the guidelines or not, on the remand, a decision that that judge has never made. Yes, and to elaborate on that, just by its terms, section 3742g2 is inconsistent with the remedial rule announced in Booker, which was that the guidelines would be advisory rather than mandatory. Breyer, it didn't say every day. I'll forget that argument. But what I was about to say, I do have another point I'd like to get out of, as long as I have this opportunity. It seems to me there is a considerable confusion, perhaps only from my point of view, but this word, variance, I mean, why is it felt necessary to use the word variance if it's true, and it's not totally true, but if it's true, the judge, you can apply the guideline, apply it. Now, the guidelines themselves gives you the right to depart in every single case, but, for example, a handful of factors such as race, where you really shouldn't change the thing just because of race. So what is the need for the variance? Now, maybe this 5K9 point, whatever that is, maybe there are a handful where there is a need, and maybe this is an example of it. But are there a lot, many? What's this? Can you talk a little bit about it? Two points with respect to that, one of which is, this is a provision where the commission has specifically said it is not lawful to depart on this basis, though it is permissible, again, to sentence within the range of the estimate. It's just a policy statement. Does it enjoy the same status at law? Correct. Yes. They're treated as by they – in the era when the guidelines were treated as mandatory, they were treated as binding in their turn. There are other guidelines provisions about departures which either foreclose other bases or which will say they're not usually or ordinarily a basis for departure. Ah, yes. And so there still is litigation in a post-mandatory guidelines system about whether it's a correct application of the guidelines to depart on this basis. Counsel, perhaps before your time is up, you'd like to address the first question? Yes. With respect to the law of the case issue, as it has been framed by the briefs by Petitioner on the merits in this Court, it is an extremely narrow issue. And that is, taking as a given that the Eighth Circuit had authority to order de novo resentencing and that, in fact, it did order de novo resentencing, was at that resentencing the district court, the resentencing district court judge bound by the earlier judge's discretionary determination that the substantial assistance provided by Defendant Pepper justified a 40 percent reduction. And to ask that question is almost to answer it in the sense that the phrase de novo means a new or a fresh. And the point of the point of the appeal had nothing to do with the issue at all. I'm thinking of the analogy in the civil context. Say you have two totally unrelated issues. If you appeal issue B and that's what the fight is about and you reverse and send it back, it would at least be unusual for the judge to say, oh, and by the way, I'm coming out the other way on issue A. And that is true in the civil setting. Courts have taken the view that sentencing is different because sentencing is a relatively discreet proceeding where there are a number of interconnected determinations, a lot of them discretionary, based on the judge's assessment, a lot of them conditionally relevant to each other. But these aren't interconnected, are they? Well, the amount of substantial assistance that is given in a particular case can easily be interconnected to antecedent determinations, including what the guidelines level is. Because judges often — My point is that the level of assistance is not in any way connected to the post-sentencing conduct. These two issues are not interrelated, but I'm explaining the reason for the doctrine in the sentencing setting, or the greater willingness of courts of appeals to order de novo resentencing and say, even though the particular issue on appeal doesn't directly open up the other issues that may have been determined at sentencing. Judges in the courts of appeals in the sentencing context all agree they have authority to order de novo resentencing where they think it's appropriate. And they tend to think it's more appropriate in the sentencing context than generally, because, as I said — Well, but why does that matter when you're talking about two totally unrelated issues? Because also — There's no reason to suppose that the court of appeals thinks there ought to be any issue with respect to question A when they focus solely on question B. I agree. But, again, when the court of appeals orders de novo resentencing, that doesn't open up only substantial assistance. The point is the judge is going to go through and make, as of the time of the resentencing, determinations on the situation as it exists at that time. So it is possible, and not at all unusual, that issues that were not up in the court of appeals will come up on resentencing. So you're worried about the general rule, but you agree that none of those arguments make any sense in this case? I agree that it would have been permissible for the court of appeals here to choose not to direct a de novo resentencing. That would have been a permissible way to resolve the issue as well. That wouldn't interfere with the new judges or the judges' discretion across the board? I have never had to sentence someone, but it seems to me that particularly when you have a change in the judges, there's a very personal investment in what you do with the defendant. And to say that, well, another judge looked at this factor, so your hands are tied in that respect, is a questionable result. I agree, and I should say that the issues that we're discussing are interesting ones, but they are not the law, the case issue that's being presented here, because in fact the Eighth Circuit did order de novo resentencing. The defendant has never challenged the validity of their ordering de novo resentencing. So the only issue is, what does it mean for the law of the case doctrine when de novo resentencing is ordered? And on that question, it's very clear, in fact, not just the Eighth Circuit, but every court of appeals that we're aware of to resolve that question has said that, as the name suggests, when the circuit chooses, for whatever reasons, to order de novo resentencing, the judge at the resentencing is not bound by earlier determinations of the district court judge. Roberts Is there any reason to suppose when they say de novo resentencing, they're talking about the mistake that was made with respect to issue B and not issue A? No, there's no reason to suppose that. But what there is reason to suppose. Is it their practice in some cases to say we're sending this back for de novo sentencing, but only with respect to the issue that we addressed? Or do they just normally throw it out and say start over without any supposition that the district court would take a look again at something that wasn't before the court of appeals at all? Different circuits approach that somewhat differently. But all circuits have to understand that they have authority to make individualized case determinations, and they do. There are cases where they do. Are you aware of any case where the Eighth Circuit has said we're sending this back for resentencing, but only on the issue that we addressed on appeal? Yes. And the Eighth Circuit's opinions make clear that although they apply sort of a default presumption that there will be de novo resentencing, they make clear that they have authority to order limited resentencings, and they do that where in a particular case they think that's more efficient or more appropriate. They explain in this case, by the way, with respect to the suggestion you made earlier, Mr. Chief Justice, that part of the reason they thought de novo resentencing was appropriate here is because they were reassigning the matter to a different judge, and therefore I think for some of the reasons that you were suggesting they felt de novo review was appropriate. But again, on the narrow law of the case issue that is presented, there is no disagreement among the courts of appeals, and as the name suggests, if there is a de novo resentencing, the matter is de novo. If I could for just a moment turn back to the post-sentence rehabilitation issue to make one last point, which is going one level deeper into the Booker remedy analysis, again, even if there were some, excuse me. Finish your sentence. All I was going to say is that in excising the appeal provisions that were excised in Booker, the Court identified four reasons why those should be excised, and each one of them applies equally or more so with respect to the provision at issue here. Roberts. Thank you, counsel. Mr. Chiengoli. Mr. Chief Justice, and may it please the Court. Congress enacted 3742G for the purpose of stopping district courts from evading the mandate of a court of appeals on remand and sentencing cases by relying on grounds that they did not consider at the original sentence. And as far as you're concerned, Justice Alito's question about post-sentencing criminal conduct couldn't be considered by a court either. It wasn't the factor mentioned in the original sentence. You would apply the rule equally. I would, Justice Sotomayor. Is there any logic to that? I mean, I know that when I was a district court judge, routinely post-sentencing criminal conduct would make me wonder whether this person really was worthy of a lower sentence or not, or of whatever largesse I may have given him or her in the original sentence. What makes sense about that? Well, I think one thing that would make sense of it is that there's a different mechanism. There's an opportunity for that to be reflected in a separate criminal prosecution and a sentencing for that conduct. When the sentencing guidelines were created and when 3742G was passed, all of this was done against the backdrop of a sense that the sentencing guidelines were to focus on avoiding unwarranted disparities, but as the Court observed in Booker, sentencing similar sentences for similar crimes conducted in similar ways. When this provision was passed, Congress was worried, I thought, about the situations where district court judges' hands were on appeal, told you can't use this ground for departure. And often the Court, because they thought the original sentence they gave was fair, would then articulate another ground for departure that they hadn't earlier. But didn't all of that go out of the window with Booker? I mean, the presumption in Booker that drove Congress was that the guidelines were mandatory. Once Booker said they weren't, why should we be limiting Congress, a judge's discretion, ab initio or post hoc, to giving what they believe is a reasonable sentence? Justice Sotomayor, I think that the purpose of 3742G is to limit the ability of a district court to evade the mandate on remand in sentencing. And I think that purpose was valid before Booker. I think it's actually even more important after Booker if you're going, for example, to have meaningful opportunities for the government to appeal. If a district court can impose a sentence that the court of appeals then finds substantively unreasonable, and on remand the district court can then consider grounds that didn't exist at the time of the original sentencing and, in fact, couldn't have been considered by the court of appeals because the evidence didn't exist at the time the court of appeals reviewed it, and is, in this case, uniquely in the hands of the defendant to create, then you're going to create essentially a procedural merry-go-round where a district court will impose a 24-month sentence, the government will appeal, the court of appeals will think that that's substantively unreasonable, it will be remanded to the district court who will say, well, in the interim, this person has rehabilitated himself, they've gotten a job and they've gone to school, and I'm imposing another 24-month sentence. These are not related to the facts of this case, but this is a different hypothetical. The government will then appeal again and say, this is ridiculous, the underlying conduct is extremely severe, 24 months is substantively unreasonable, and they'll appeal to the court of appeals. The court of appeals will say, we agree, it's substantively unreasonable, we're going to remand for resentencing, and the district court will say, well, not only has he gone to school and not only does he have a job, but he's gotten married and he's been promoted and he's been named employee of the year, so I'm imposing a 24-month sentence again. And at some point the district court, the government is going to say, I give up, because I could keep appealing, but what's the point? It appears that the district court has given up. Kennedy. But there are two explanations for your hypothetical. One is there has been a real change that affects the judge. The other is where you began, and I thought you were going, was that the judge is evading the court of appeal. Those are two different things. One may happen and one may not. That's right, Justice Kennedy, and I think that both purposes are served by 3742g. 3742g, as both Petitioner and the government, serves a constitutional purpose. What both the Petitioner and the government object to is the way that it's drafted. It's not that Congress, they say, couldn't pass this, but that they couldn't pass it the way that it's passed, because it makes essentially illegal references to the mandatory sentencing guidelines. That is a product of the fact that this statute was drafted before Booker and didn't have the benefit of knowing how Booker was going to come out. What the Court, I think, needs to decide is, post Booker, how it's going to deal with statutes like 3742g, and there are others, which stand for an entirely constitutional and important purpose, but which necessarily, because of the time that they were drafted, have references to or language that assumes the existence of the mandatory guidelines. Sotomayor, How many of those statutes are left that we — that the Court hasn't looked at? Well, I can think of at least three problems that would result from the Court saying that any reference to a mandatory guidelines scheme creates essentially a facial invalidity if it's incapable of constitutional review. Which are the three? Well, first of all, 3553a makes two references to 3742g, and so there's a question as to how you would apply those if you strike 3742g. I think that 3553c, to the extent that it requires a written statement in the context of a departure, starts to raise questions. And as Justice Scalia pointed out in his dissent in Booker itself, there's a real question as to whether 3742f has any reason to exist after Booker. Breyer, with all those, what you tend to do is take the parts that refer to the other statute and say they don't do anything. And does that ruin the provision that's in the answer? I think normally it was, no, it doesn't ruin it at all, makes sense. But this one is a tough one. I grant you that this one is a tough one. And my problem, of course, is I can think of a constitutional way of applying this, but it's a little far-fetched. And the far-fetched one makes me think it's unconstitutional and the far-fetched nature of it. And I don't think it has a spillover. Justice Breyer, I've Breyer, you see, the far-fetched one was the one that was brought out. I mean, not far-fetched. To say in those circumstances that it is constitutional, where they're going to apply a new guideline, and they don't have the evidence, as much as I dissented in Prendy, I think that one probably does violate Apprendi. And I think I have to stick up for that, don't I? Well, Justice Breyer, if you're referring to the Solicitor General's hypothetical of a case in which they miscalculate the guidelines and they don't announce their reasons otherwise, I actually think that there's a way to avoid the problem in that, depending upon whether the case arises before or after this case. If it arises after this case, I think it will be very clear to district courts they need to be very careful and thorough in articulating their reasons for reaching the sentence, which, particularly in a post-Booker world, I think is a good thing. Sotomayor, I mean, we right now are receiving hundreds of petitions saying the court didn't sufficiently articulate its reasons. We're going to change the practice of the district court, I mean, dramatically. That's a good thing to do? I think having a district court articulate its reasons is a good thing. They're supposed to do that under congressional statute now, 3553C. They're supposed to do it in open court very clearly. And in certain circumstances, they're supposed to do it in writing. Breyer, they can check a box, and the unless they're going to depart. Now, the part that's not necessarily you could deal with later, but the part that's confusing me is where this word variance comes into, because I think the word departure would normally, normally cover the matter, and then when it gets to the court of appeals, the court of appeals, whether they're inside the guideline or outside the guideline and have departed, reviews the matter for, you know, inside and have departed or outside those situations. It says in Booker the standard is to review for reasonableness. But where does this variance business come in? Well, I think in the context of 3742G, that's one of the linguistic vestiges of the guidelines, which is that up until Irizarry, the court itself used the terms variance and departure interchangeably because a variance didn't exist prior to Booker. I don't — the court obviously spoke to the question of whether or not it was going to equate a variance and a departure in the context of Rule 32H in Irizarry. I don't think actually that that distinction was essential to the holding in Irizarry, and I think it could be limited there. I think particularly where the court is trying to avoid invalidating a duly enacted statute, some flexibility in terms of interpreting departure in 3742G2B would be warranted. And you would essentially say that to the extent that a court is varying or departing, that they would need to articulate the reasons. Ginsburg. It's true that in all of the briefing in Booker, 3742G was not mentioned by any party. That's correct, Justice Ginsburg. So it was a question of the court overlooking it. The court didn't say anything one way or the other about it because it wasn't presented as one of the statutes that would have to be overruled. Justice Ginsburg, I think that obviously the court is dealing very clearly with the constitutionality of it now, and I think that Congress had very good reasons for enacting it that continue to be valid. It's capable of constitutional application, I think, in the mine run of cases, and in particular in this case. There's no Sixth Amendment allegation in this case. Breyer. The problem, to be very specific, is I think the following. The first sentencing, the judge applies the guideline. He says there was $300,000 stolen from the bank. I look it up over here and I get sentence X. On appeal, the appellate court says you should have counted the securities as money taken. So it's $1,300,000. So go and apply Guideline Y. He goes back, looks at Y, it's a very high number, and thinks given certain circumstances which make this case unusual, I want to depart downward. Now, I would have thought that the judge's behavior in that second instance would have violated apprending, because that judge was either going to sentence, even without the departure, on the basis of his having taken some securities worth a million dollars, which was not a fact that went to the jury, there it is, or he'd have to throw aside the guideline. But this statute says you can't throw aside the guidelines and you can't depart for a reason that wasn't previously given. So this statute is forcing him to sentence on the basis of a fact that was not found by a jury. I think that's the argument for saying it violates apprending, and I don't see why it doesn't. Justice Breyer, I think that in certain applications of this statute, there will be problems. I think that's unavoidable, and I think it's an unavoidable consequence of having been drafted before Booker. The question is how the Court's going to address that. Is the Court going to read the statute flexibly? Is it going to interpret it in a way that tries to avoid those circumstances, those constitutional problems? Or does it ultimately determine that it's essentially not capable of a saving construction? I think it is capable of a saving construction. I think it's capable of a saving construction in a couple of ways that avoid most of the problems that have been articulated by both Petitioner and the government. The first, which actually Petitioner points out in his reply brief, is in 3742G itself, there's this language about accept that, that appears to limit the ability of the district court to actually follow the mandate of the court of appeals. I don't think that that can be read to limit the mandate of the court of appeals, nor do I think it anyone is suggesting that 3742G changes the rule in Harper v. Virginia Department of Taxation, the idea that district courts obviously would have to give the benefit of intervening changes in law, in judicial decisions. And so Booker, which has been used as an example, Booker on remand, would likely have been entitled to a resentencing, a resentencing based on factors that the district court judge could have considered at the time of the original sentencing, but now in light of Booker, basically a do-over. And for a small section of cases, I think that would work. Scalia, would you explain as concisely as you can why you think that G2 would be unconstitutional in some limited category of cases and how that can be avoided by what you call a flexible interpretation? Justice Scalia, I think I said it would be problematic. I don't think I conceded that it would be unconstitutional. I think that there are some circumstances where, by a strict read of G2, the court would be required to apply the guidelines, a guidelines range. And the example that the Solicitor General's office gave might be the best, which is where you have a circumstance where the district court has imposed a sentence within the guidelines range, has not given any other reason for a variance, the sentence is at the bottom of the range, which may or may not indicate that they thought that the sentence should be at the low end, and then on a calculation, there is a determination that the calculation was incorrect, and on remand, the district court says, I'm bound by this new calculation, and I'm giving you a mandatory sentence. I'm giving you, I'm bound by the guidelines range, because I didn't give any other reasons. I didn't give any other reasons under 2A, and therefore, I can only give you a guidelines sentence. And in those cases, the guidelines would be mandatory. And under Booker, I think there is a question as to whether a court can impose a mandatory sentence in any case after Booker. Scalia. Well, but, I mean, why wouldn't you read that simply to have been overcome by the holding of Booker, that you apply, that every judge has to apply 3553 factors and decide the ultimate sentence on the basis of those factors? I mean, isn't that what Booker said? And why wouldn't you apply that to 2A and B as well? I certainly think the Court could take that approach, and in fact, I think to the extent, I think it should. I think that the Court should find a way to read or construe 3742A to be constitutional, because it serves an important and independent policy choice that's been identified by Congress. But doesn't it conflict with 3553A2, that is, the overriding provision that a sentence should be sufficient, but not greater than necessary to deter criminal conduct? And the judge is looking at this defendant and says a criminal to deter criminal conduct and protect public against future crimes. Well, this person has turned out to be a model citizen, and we don't have to keep him in for a longer time to protect the public against future crimes. So if I were to apply 3742G2, I would be giving a sentence that is unnecessary to protect the public against future crimes. Fisherman, Justice Ginsburg, I think you're pointing out that there is some tension which I've admitted. I think that, again, this statute was drafted at a time when there was a different set of assumptions. And so there may be applications which create some difficulty. They create more difficulty in terms of how it's applied. But they are not the kinds of difficulties that I think are insurmountable. And they're certainly not the kinds of difficulties that support what I think is a proposed broad solution by both Petitioner and the government, that post-Booker, sentencing statutes which impose a mandatory guideline sentence really in any applications are facially unconstitutional. I don't read Booker that way. I don't think the Court intended it that way. Certainly, the remedial holding in Booker doesn't indicate that. If it did, if that is in fact what the remedial holding in Booker stands for, I think the implications are much more far-reaching than the Court intended. If there are no further questions. Roberts. Thank you, counsel. Mr. Parrish, you have two minutes remaining. Thank you. I would like to first address the law of the case issue. And initially I said it was apples and oranges, and it is. On two separate occasions after the 5K ruling had been made by District Court Judge Bennett, it was appealed twice to the Eighth Circuit. After it was appealed twice to the Eighth Circuit, they had an abusive discretion standard they could have used to resolve it. They did not comment on it. They upheld it. Then it was sent back down. After it had come up on our original writ to this Court, this Court vacated the Eighth Circuit opinion, sent that opinion back down. But the law of the case, as you said, Mr. Chief Justice Roberts, still remained with the District Court on the initial ruling. The initial ruling that Judge Bennett made with regard to the 5K departure was a separate ruling. Now, the Eighth Circuit, in its own analysis of how you interpret its remand, we disagree with the government. They said they you look at the analysis of the case to determine their remand. And in that instance, we believe that the remand was the analysis of the case that the 5K departure remains. No new facts came in, no new controlling law came into place, and there was no manifest injustice. She heard no new facts on this case. We believe the Court should reverse, vacate the Eighth Circuit court of opinion case regarding post-sentencing rehabilitation and remand with direction from this opinion that requires the Court to impose a sentence that does not exceed 24 months. And Justice Ginsburg, we did mention on page 33 of our brief the 3742G2 as a footnote when the case first came up. But the Eighth Circuit, as you all know, did not use that rule. They used an old rule that was in effect from the Sims case to impose the sentence. It was not part of 3742G2 or any other statute. Thank you. Roberts. Thank you, counsel. Mr. Chingoli, you've briefed and argued this case as an amicus curiae in support of the judgment below at the invitation of the Court and have ably discharged your responsibility. The case is submitted. The Honorable Court is now adjourned until tomorrow at 10 o'clock.